Lawrence. V. Gelber
James T. Bentley
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 595-5955

Counsel to the Laundry, Dry Cleaning
Workers and Allied Industries Benefit
Funds

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X
In re:                                                      :    Chapter 11
                                                            :
                                                            :
B & M LINEN CORP.,                                          :    12-11560-ALG
                                                            :
                    Debtor.                                 :
------------------------------------------------------------ X

**MOTION OF THE LAUNDRY DRY CLEANING WORKERS AND ALLIED INDUSTRIES
BENEFIT FUNDS TO CONVERT THE DEBTOR'S CASE TO CHAPTER 7 OR,
ALTERNATIVELY, FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE**

The (i) Laundry, Dry Cleaning Workers and Allied Industries Health Fund, Workers United, Affiliated with SEIU (the "Health Fund"); (ii) Laundry, Dry Cleaning Workers and Allied Industries Retirement Fund, Workers United, Affiliated with SEIU (the "Retirement Fund"); and (iii) Laundry Dry Cleaning Workers and Allied Industries Education and Legal Assistance Fund, Workers United, Affiliated with SEIU (the "Education Fund," and together with the Health Fund and the Retirement Fund, the "Benefit Funds"),, submit this motion (the "Motion") for entry of an order converting this case to one under chapter 7 or, in the alternative, directing the appointment of a chapter 11 trustee for the above-captioned debtor (the "Debtor") pursuant to sections 105(a), 1104(a)(1), and 1104(a)(2) of the Bankruptcy Code. In support of the Motion, the Benefit Funds

DOC ID-19043984.3

respectfully represent based on their own knowledge or, where they do not have personal knowledge, on information and belief, as follows:

## PRELIMINARY STATEMENT

1.      Ample cause exists to convert this case to one under chapter 7 or, in the alternative, for the appointment of a chapter 11 trustee. The fire that destroyed the Debtor's business approximately one month ago was a substantial loss that diminished the estate and has resulted in the absence of any reasonable likelihood of rehabilitation. Even the Debtor itself has acknowledged that "cause exists to dismiss its case." It is thus axiomatic that cause also exists to convert this case.[1]

2.      There have been several troubling incidents and accusations of misconduct leveled at the Debtor that demonstrate creditors in this case are in need of a chapter 7 trustee to protect their interests. For example, prior to bankruptcy, the Debtor was implicated in a long-standing scheme involving its alleged theft of millions of dollars in services from Con Ed. Since the case was commenced, the Debtor's only operating facility was destroyed in a four-alarm fire that presently is under investigation by the New York City Fire Department. The Debtor's sole remaining asset of any significance appears to be insurance proceeds resulting from the fire. These proceeds plainly should be used to satisfy in full the claims of the Debtor's creditors. Nevertheless, the Debtor proposes a structured dismissal of its case in which it will pay claims using only the first $2 million of the insurance proceeds, an amount it unilaterally asserts to be adequate to satisfy creditors' claims in full and notwithstanding, as the Benefit Funds understand it, the fact that the Debtor has significantly more than $2 million of insurance available to it.

---

[1] The Benefit Funds simultaneously are objecting to the Debtor's application to dismiss its chapter 11 case.

DOC ID-19043984.3

3. The Debtor is wrong. More than $2.4 million in claims have already been filed against the Debtor even before a bar date has been established. More troubling, the insurance policies may have more than one loss payee.[2] Thus, the Debtor's assertion that creditors will be paid from insurance money left behind in an escrow, or can pursue the Debtor for unsatisfied claims after the case is dismissed, is speculative at best. Any dispute regarding the insurance proceeds and whether they are property of the estate should be determined in this Court, which will not happen if this case is dismissed.

4. In the alternative, the Benefit Funds assert that cause exists for the appointment of a chapter 11 trustee. Simply put, and as set forth below, the Benefit Funds do not trust the Debtor's principals to adequately and appropriately administer the estate's remaining asset—the insurance proceeds—for the benefit of the estate and its creditors.

## BACKGROUND

5. The Debtor was a party to a collective bargaining agreement and supplemental agreements thereto (the "CBA") with the Laundry, Dry Cleaning and Allied Workers Joint Board, UNITE HERE. The CBA obligated the Debtor to, among other things, make contributions to the Benefit Funds and submit to audits.

6. The Debtor repeatedly flouted its obligations to contribute to the Benefit Funds—collectively, the second largest creditor in this case—as it was required to do under the CBA. For example, in 2009, the Benefit Funds performed an audit of the Debtor's books and records. The audit revealed an audit deficiency of contributions totaling $139,595.62. The Debtor refused to pay the audit delinquency despite repeated collection attempts by the Benefit Funds and their counsel.

---

[2] At the last status conference, counsel for 220 Laundry LLC asserted that it was added as a named insured in connection with its proposed purchase of the Debtor's business. See Transcript of August 8, 2012 Hearing ("Tr."), 12:5-9.

In addition, the Debtor failed to make full contributions for the period of December 2008 through and including November 2009, resulting in an additional delinquency of $15,338.65 in unpaid contributions.

7.  As a result, on July 1, 2010, the Benefit Funds filed a complaint against the Debtor in the United States District Court for the Southern District of New York (Case No. 10-05075) seeking the audit delinquency of $139,595.62, the unpaid contributions of $15,338.65, plus interest, liquidated damages, costs, and attorneys fees. The Debtor's attorney informed the District Court that the Debtor neither would exchange discovery responses nor respond to the Benefit Funds' communications regarding discovery. The Benefit Funds subsequently moved for summary judgment, which the District Court granted on February 3, 2012.

8.  On April 16, 2012, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.

9.  Shortly after filing for bankruptcy, the Debtor moved for approval of a stipulation with Con Ed (the "Stipulation"). In addition to providing Con Ed with adequate protection under Section 366 of the Bankruptcy Code, the Stipulation sought to settle Con Ed's claims that the Debtor had not paid for more than $5 million of gas service supplied by Con Ed through February 23, 2012, plus interest and fees. *See* Stipulation [Docket No 14]. According to the Stipulation, Con Ed asserts that from December 2005 through December 2011, not all of the gas supplied by Con Ed and consumed by the Debtor was metered by Con Ed's gas meter. *Id*. 220 Laundry, LLC, which had entered into a pre-petition purchase agreement with the Debtor, asserts that the Debtor stole the gas by physically tampering with its natural gas meter. *See* 220 Objection to Proposed Order, at 6 [Docket No. 22]. The Stipulation, which was approved on an interim basis by the Court, reduces the amount of Con Ed's prepetition unsecured claim to $1.5 million. The Debtor and Con Ed seek

to roll-up this $1.5 million amount into a post-petition obligation of the Debtor that would be paid over 120 consecutive monthly payments.[3]  *Id*.

10.    On July 30, 2012, the location where the Debtor conducted its commercial laundry business burned down.  The Debtor advised the Court by letter, dated August 1, 2012, that the New York City Fire Department and Department of Buildings is conducting an "inquiry," and would decide whether the building was salvageable.  At the August 8 status conference, the Debtor's attorney informed the Court that the origin of the fire was under investigation by the New York City Fire Department.  *See* Aug. 8 Tr. 6:16-18 ("The fire, the origins are under investigation by the Fire Marshal.  They have not completed that investigation yet.").

11.    On August 15, 2012, the Debtor moved for a structured dismissal of this case (the "<u>Dismissal Motion</u>") [Docket No. 31].  The Debtor proposes to escrow the first $2 million of any insurance proceeds that it receives on account of the fire to pay its creditors; an amount it asserts is "sufficient [] to pay its undisputed creditors a significant amount of their prepetition claims, if not pay them in full."  *See* Dismissal Motion at 8.  The Debtor further proposes that, "[t]o the extent there is a short fall in the payment of creditors' claims from the $2,000,000 of insurance proceeds, dismissal of the case will permit creditors to seek appropriate remedy against the Debtor or their principals in a Court of competent jurisdiction if they do not receive full payment from some other source, including any future income of the Debtor."  *Id*.

---

[3]    The Benefit Funds assert that final approval of the Stipulation should be denied until a chapter 7 or 11 trustee has been appointed and had an opportunity to independently analyze the Stipulation.

## JURISDICTION

12. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

13. By this Motion the Benefit Funds respectfully request entry of an order converting this case to one under chapter 7 or, in the alternative, directing the appointment of a chapter 11 trustee pursuant to sections 105(a), 1104(a)(1) and 1104(a)(2) of the Bankruptcy Code.

## BASIS OF RELIEF REQUESTED

*Cause Exists to Convert the Debtor's Case to Chapter 7*

14. Under section 1112(b), a court can dismiss or convert a chapter 11 case to a case under chapter 7 "for cause" so long as it is in the best interests of both the creditors and the estate. *See In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010) (citing 7 Collier on Bankruptcy ¶ 1112.04 (16th ed. 2009). Subsection (b)(4) contains a non-exhaustive list of sixteen examples of events that may constitute "cause." *Id*. ("list, however, is "not exhaustive" and courts are free to consider other factors.") (citing *In re Ameribuild Const. Mgmt, Inc*., 399 B.R. 129, 131 n.3 (Bankr. S.D.N.Y. 2009) (citing legislative history). Under section 1112(b)(4)(A), cause for conversion or dismissal is established if there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). *Id*. "In this context, rehabilitation means to put back in good condition and reestablish on a sound basis." *Id*. (citing *In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003).

15. The moving party has the burden of demonstrating cause for dismissal or conversion. *Id*. (citing *In re Loco Realty Corp.*, No. 09-11785 (AJG), 2009 Bankr. LEXIS 1724, 2009 WL 2883050, at *2 (Bankr. S.D.N.Y. Jun. 25, 2009). Bankruptcy judges have wide discretion to

determine whether cause exists to dismiss or convert a case under section 1112(b). *Id.* (citing *In re Kholyavka*, No. 08-10653 (DWS), 2008 Bankr. LEXIS 2631, 2008 WL 3887653, at *5 (Bankr. E.D. Pa. Aug. 20, 2008) (quoting H. Rep. 595, 95th Cong., 1st Sess. 405(1977)).

16.   Cause to convert this case plainly exists here. The fire that destroyed the Debtor's business has resulted in a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4). The Debtor itself has acknowledged its uncertain prospects of rehabilitation. *See* Dismissal Motion at 6 ("Upon information and belief, the Debtor intends to restart its business operations at some point in the future, but it is not sure when that will be."). The Debtor has further acknowledged that cause exists to dismiss this case. *See* Dismissal Motion at 7 ("The recent unexpected events have made that prospect [*i.e.*, a sale of substantially all of its assets] not practicable, at least for the foreseeable future. Therefore, the Debtor, by this application, seeks dismissal of this Chapter 11 Case."). "Cause" as defined under section 1112 applies both to conversion and to dismissal of a case, thus, because cause exists to dismiss, it also exists to convert this case to chapter 7.

***Conversion of the Case is in the Best Interests of Creditors.***

17.   Once a party establishes cause, a court must examine whether dismissal or conversion of a case to one under chapter 7 is in the best interests of the creditors and the estate. *BH S&B Holdings, LLC*, 439 B.R. at 346 (citing 7 Collier on Bankruptcy ¶ 1112.04[6]). Courts have looked to multiple factors to determine which action is in the best interests of the creditors and the estate, including: (i) whether the estate consists of a "single asset;" (ii) whether the debtor has engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests; (iii) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors; and (iv) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns. *Id.*

DOC ID-19043984.3

18.     Moreover, section 1112(b)(2) states that the court must convert or dismiss for cause shown unless: (A) there is a reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time; and (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)-(i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court. *Id.*

19.     Here, conversion is in the best interests of the estate because it will maximize the value of the Debtor's remaining asset (*i.e.*, the insurance proceeds) for the benefit of the Debtor's creditors. As set forth in the Dismissal Motion, the Debtor proposes to place in escrow only $2 million of the insurance proceeds to satisfy creditor claims, which the Debtor asserts is enough to pay undisputed creditors in full. The Debtor is wrong. In fact, there are already more than $2.451 million in claims filed in this case.[4] A bar date has not yet been established, meaning that additional (and potentially substantial) claims may be filed. The Benefit Funds understand that substantially more than $2 million in insurance proceeds is available to the Debtor. Because the rehabilitation of the Debtor is unlikely, the entirety of the insurance proceeds must be used to satisfy creditor claims before any amount is returned to the Debtor or its principals.

20.     Further, there have been several accusations of misconduct leveled at the Debtor that lead the Benefit Funds to conclude that creditors in this case are in need of a chapter 7 trustee to protect their interests. While the Benefit Funds do not express any view regarding these accusations, they are troubling and warrant the appointment of a trustee.

---

[4]    Even a cursory review of the docket reveals that: (i) Con Ed has a $1.5 million claim (assuming the Stipulation is approved on a final basis); (ii) the Benefit Funds have a claim of not less than $421,747.00 for a judgment rendered for unpaid contributions to a benefit plan; (iii) the Laundry Distribution and Food Service Joint Board, Workers United, SEIU has a claim of not less than $404,399.75 for unpaid wages to union members; (iv) Kannegiesser USA, Corp. has a claim for $115,533.32 for services supplied and equipment delivered; and (v) the New York State Tax and Finance Unit has claims for more than $10,000 for unpaid taxes.

DOC ID-19043984.3

21. Additionally, conversion of the case will permit a chapter 7 trustee to investigate whether avoidance actions are available to satisfy creditor claims.

***In the Alternative, Appointment a Chapter 11 Trustee is Warranted.***

22. The appointment of a disinterested chapter 11 trustee (or other independent fiduciary) in the Debtor's case is warranted under sections 105(a) and 1104(a) of the Bankruptcy Code.

23. Section 1104(a) of the Bankruptcy Code provides that at any time after the commencement of a chapter 11 case but prior to confirmation of a plan, a bankruptcy court shall order the appointment of a trustee:

> (1) *for cause*, including fraud, dishonesty, incompetence, or gross mismanagement, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;
>
> (2) *if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate*, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. §§ 1104(a) (emphasis added).

24. By its terms, section 1104(a) authorizes the appointment of a chapter 11 trustee at any time after the commencement of a chapter 11 case.

25. Section 1104(a)(1) sets forth a nonexclusive list of factual predicates that support a finding of "cause" for the appointment of a chapter 11 trustee, including "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management . . ." 11 U.S.C. § 1104(a)(1); *see also In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 472 (3d Cir.

1998) (stating that "the language of § 1104(a)(1) does not promulgate an exclusive list of causes for which a trustee must be appointed . . . ."); *In re V. Savino Oil & Heating Co.,* 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989).

26.  The court may consider both prepetition and postpetition misconduct of the current management when making the determination that "cause" exists for the appointment of a trustee. 11 U.S.C. § 1104(a)(1); *Midatlantic Nat'l Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales, Inc.)*, 4 B.R. 635, 644-45 (Bankr. E.D.N.Y. 1980).

27.  A bankruptcy court need not conduct a full evidentiary hearing prior to appointing a trustee. *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990). Under section 1104(a)(1), appointment of a trustee is mandatory if cause is shown. *See In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988) ("Once a court has found that cause exists under § 1104, it has no discretion, but must appoint a trustee."); *V. Savino Oil*, 99 B.R. at 525 ("Once the court has found that that cause exists under § 1104(a)(1), there is no discretion; an independent trustee must be appointed."); *In re Deena Packaging Indus., Inc.*, 29 B.R. 705, 706 (Bankr. S.D.N.Y. 1983) ("Appointing a trustee for cause is not a discretionary function . . . .").

28.  Cause exists here to appoint a chapter 11 trustee. The Debtor has provided this Court and creditors with no business plan or any indication of how it intends to use any insurance proceeds that it does not escrow for creditors. Nor has the Debtor provided any clue as to how it intends to fund the inevitable post-dismissal litigation with creditors, who certainly will not be paid in full from the insurance proceeds that the Debtor does propose to leave behind in escrow. Moreover, the Debtor's management stands accused of participating in a scheme to defraud Con Ed of millions of dollars in services over a protracted period.

29. A debtor-in-possession must act as a "fiduciary of his creditors" to "protect and to conserve property in his possession for the benefit of creditors", and to "refrain [ ] from acting in a manner which could damage the estate…." *See Ionosphere* 113 B.R. at 169 (quoting *In re Sharon Steel Corp.*, 86 B.R. 455, 457 (Bankr. W.D. Pa. 1988)). A debtor-in-possession has all the duties of a trustee in a Chapter 11 case, including the duty to protect and conserve property in its possession for the benefit of creditors. *Id.* (citing *In re Devers*, 759 F.2d 751, 754 (9th Cir.1985); *In re Four Score Broadcasting, Inc.*, 77 B.R. 404, 407 (Bankr. W.D.N.Y. 1987). "The job of a debtor-in-possession remains under the Code as that described by Judge Friendly—to get the creditors paid." *In re Pied Piper Casuals, Inc.*, 40 B.R. 723, 727 (Bankr. S.D.N.Y. 1984) (citing *In re Grayson Robinson Stores, Inc. v. Securities and Exchange Commission*, 320 F.2d 940 (2d Cir. 1963)). When a debtor-in-possession is incapable of performing these duties, a Chapter 11 trustee may be appointed. *Id*. (citing *In re McCorhill Publishing, Inc.*, 73 B.R. 1013, 1017 (Bankr. S.D.N.Y. 1987). Here, the Debtor has shown that it is incapable of performing its fiduciary duties. *See Sharon Steel*, 86 B.R. 455, 458 ("the most common basis for appointing a trustee under § 1104(a)(1) is for gross mismanagement and incompetence.").

30. Even in the absence of "cause", the court may still appoint a trustee pursuant to section 1104(a)(2) if it is in the "interest of the creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989) ("Subsection (a)(2) allows appointment of a trustee when no 'cause' exists."); *In re Euro-American Lodging Corp.*, 365 B.R. 421, 428 (Bankr. S.D.N.Y. 2007) ("Unlike § 1104(a)(1), § 1104(a)(2) does not require a finding of fault; the court may appoint a trustee even if no 'cause' exists"); *Ionosphere Clubs,* 113 B.R. at 168 (stating that section 1104(a)(2) "allows the appointment of a trustee even when no 'cause' exists.").

31. Section 1104(a)(2) provides a more flexible standard for appointment and gives the court discretion to appoint a trustee "when to do so would serve the parties' and estate's interests." *Marvel*, 140 F.3d at 474; *Sharon Steel*, 871 F.2d at 1226; *Ionosphere*, 113 B.R. at 168. A moving party has the burden of showing by "clear and convincing evidence" that the appointment of a trustee is warranted. *In re Bayou Group, LLC*, 564 F.3d 541, 546 (2d Cir. 2009). In determining whether a trustee should be appointed under section 1104(a)(2), courts "look to the practical realities and necessities." *Ionosphere*, 113 B.R. at 168. Among the factors considered by courts are:

> (i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation; (iii) the confidence – or lack thereof – of the business community and of creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment.

*Ionosphere*, 113 B.R. at 168 (citations omitted); *see V. Savino Oil*, 99 B.R. at 527 n.11 ("the factors constituting a basis for appointing a trustee under 1104(a)(2) are amorphous, diverse, and necessarily involve a great deal of judicial discretion."); *Euro-American*, 365 B.R. at 427.

32. Each of these factors support the appointment of a chapter 11 trustee in this case. First, the Benefit Funds question the trustworthiness of the Debtor's management. Prior to bankruptcy, the Debtor flatly refused to participate in the discovery process in the District Court action brought by the Benefit Funds. The Debtor's management allegedly schemed to steal millions of dollars of services from Con Ed, and now propose to leave behind inadequate insurance proceeds to satisfy creditor claims, while challenging creditors to pursue them outside the bankruptcy court for the rest. As even the Court has acknowledged, "[w]e have a company that's out of business, and we have a management that has a record that has been criticized, to say the least, in the past….[i]t

seems to me that the best interests of all creditors might well be either a conversion or a Chapter 11 trustee…." *See* Tr. 13:13-17; 13:22-24.

33.    Second, the fire that destroyed the Debtor's facility makes any rehabilitation unlikely, as the Debtor itself acknowledged in its Dismissal Motion. *See* Dismissal Motion at 6.

34.    Third, the Benefit Funds have no confidence in the Debtor's present management to adequately administer the estate's remaining asset—the insurance proceeds—for the benefit of the estate and its creditors. *See Eurospark Indus., Inc.*, 424 B.R. 621, 630-633 (Bankr. E.D.N.Y 2010); (collecting cases in which trustee was appointed when, among other things, creditors had lost confidence in management).

35.    Finally, under these circumstances, the need for a Chapter 11 trustee to independently evaluate potential avoidance actions and appropriately handle the distribution of the insurance proceeds is paramount and outweighs the administrative burden that the estate will incur. *See Eurospark Indus., Inc.*, 424 B.R. at 632 (citing *In re Wings Digital Corp.*, No. 05-12117, 2005 WL 3789334, at *6 (Bankr. S.D.N.Y. May 16, 2005) (the benefits of a chapter 11 trustee outweighed the burden of the cost).

36.    The appointment of a chapter 11 trustee is in the best interests of the estate because there is no genuine possibility of a reorganization and the Benefit Funds have no confidence in the Debtor's ability to carry out the fiduciary obligations of a debtor-in-possession.

## CONCLUSION

WHEREFORE, the Benefit Funds respectfully request that the Court enter an order, substantially in the form attached to the Motion, (i) converting this case to one under Chapter 7, or, alternatively, appointing a chapter 11 trustee, and (ii) for such other and further relief as the Court deems just and proper.

Dated: September 5, 2012
      New York, New York

**SCHULTE ROTH & ZABEL LLP**

By: _/s/ James T. Bentley_
Lawrence. V. Gelber
(A Member of the Firm)
James T. Bentley
919 Third Avenue
New York, New York 10022
(212) 756-2000

*Counsel to the Laundry, Dry Cleaning Workers and Allied Industries Benefit Funds*

DOC ID-19043984.3