SHAFFERMAN & FELDMAN LLP
Joel M. Shafferman
286 Madison Avenue, Suite 502
New York, New York 10017
Telephone: (212) 509-1802

*Counsel for B&M Linen Corp.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x
In re:                                            :
                                                  :  Chapter 11
B & M Linen Corp.,                                :
                                                  :  Case No. 12-11560 (ALG)
                                                  :
                                                  :
                    Debtor.                       :
                                                  :
------------------------------------------------- x

**DEBTOR'S OBJECTION TO PROOF OF CLAIM No. 14
FILED BY 220 LAUNDRY LLC**

TO THE HONORABLE ALLAN L. GROPPER:

B&M Linen Corp. (the "Debtor"), by and through its undersigned counsel, hereby submits this objection (this "Objection") to the proof of claim filed by 220 Laundry LLC ("220 Laundry"), and respectfully represents as follows:

**Preliminary Statement**

1.  Proof of claim number 14 (the "Claim") filed by 220 Laundry should be disallowed and expunged in its entirety. 220 Laundry filed the Claim in an outrageously exaggerated amount of $32 million based on an alleged breach of contract by the Debtor. Surprisingly, and conspicuously absent from the Claim, is the fact that 220 Laundry was obligated to pay more than $10 million to the Debtor but, to date, has paid approximately $600,000.

- 1 -

2.   220 Laundry alleges that the Debtor is liable for the breach of a certain assets purchase agreement (the "Assets Purchase Agreement"). However, a review of the Assets Purchase Agreement, as revised by the Modified Agreement (as defined herein and, together with the Assets Purchase Agreement, the "APA"), and the facts of this case, demonstrates that the Claim is wholly without merit and that it is 220 Laundry which actually owes the Debtor a substantial sum of money as a result of *220 Laundry's* breach of the APA.

3.   In its answer and counterclaims in the adversary proceeding pending before this Honorable Court (Adv. Proc. No. 12-01855), 220 Laundry makes allegations that are not supported by fact or evidence.[1] The same applies to the allegations that support the Claim. It is preposterous that, where 220 Laundry *owes* more than $10 million under the APA, it would now argue that the Debtor owes *it* more than three times that amount. It is also telling - and misleading - that 220 Laundry has conveniently failed to refer to and provide this Court with a copy of the Modified Agreement, which amends critical provisions of the Assets Purchase Agreement, and now governs the contractual relation between the parties.

4.   For these reasons, as set forth in greater detail below, the Claim should be disallowed.

**General Background**

5.   On April 16, 2012 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. After the Petition Date, the Debtor continued to operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[1] The Debtor hereby incorporates by reference all the pleadings it filed in the adversary proceeding as well as all the evidence, facts and arguments presented therein.

- 2 -

6. On July 30, 2012, a four-alarm fire (the "Fire") destroyed the premises where the Debtor conducted its business operations.

7. On November 15, 2012, the Court entered the Order Establishing Deadline and Procedures for Filing Proofs of Claim and Proofs of Interest and Approving Manner of Notice Thereof [Dkt. No. 77] (the "Bar Date Order"), which established December 27, 2012 as the last date by which all proofs of claim must be received by the Debtor.

8. On October 25, 2012, 220 Laundry filed the Claim, a copy of which is attached hereto as Exhibit A, pursuant to which it asserts claims for breach of contract and related damages arising out of the Debtor's alleged breach of the Assets Purchase Agreement for an amount of $31,830,268.00.

## The Pre-Petition Litigation

9. In November 2010, the Debtor entered into the Assets Purchase Agreement for the sale of its commercial laundry business to Eliot Spitzer ("Spitzer"). In May 2011, the Debtor and Spitzer entered into a written modification to the Assets Purchase Agreement (the "Modified Agreement"), a copy of which is attached hereto as Exhibit B.[2] Spitzer then executed an assignment, pursuant to which he assigned all of his rights under the APA to 220 Laundry. Shortly thereafter, the Debtor and 220 Laundry closed title on the assets which were transferred under the APA. 220 Laundry executed two notes dated May 19, 2011 and effective as of May 23, 2011, with an aggregate face amount of $9.6 million. Each note was personally guaranteed by Spitzer, Michael Steinberg, and Adam J. Teller, the principals of 220 Laundry.

10. In September 2011, 220 Laundry defaulted on the notes by failing to make payments under the notes and the APA. Thereafter, the Debtor and 220 Coster LLC, the

---

[2] Because the Modified Agreement completely vitiates its Claim, 220 Laundry simply chose not to mention it or attach a copy of the Modified Agreement to its Claim.

Debtor's landlord, sent 220 Laundry a notice of default. From May 19, 2011, the date of the closing of the sale, through September 27, 2011, the time when the Debtor was able to regain possession of its assets due to 220 Laundry's defaults and breach of its obligations, 220 Laundry and its principals failed to comply with their obligations under the APA and, as a result, became liable to the Debtor for damages.

11. As a result of the actions, inactions and negligence of 220 Laundry and its principals, the value of the Debtor's assets decreased. Because of such damages, on September 28, 2011, the Debtor and 220 Coster LLC commenced an action against 220 Laundry and its individual principals and guarantors (collectively, the "Defendants") in the Supreme Court of the State of New York, Nassau County (the "Sale Litigation"). The Defendants filed an answer and counterclaims, which counterclaims appear to serve as the basis for the Claim.

12. On June 14, 2012, the Sale Litigation was removed to the United States District Court for the Eastern District of New York. On July 26, 2012, the Sale Litigation was removed to the United States District Court for the Southern District of New York. Finally, on September 25, 2012, the Sale Litigation was transferred to this Court. The Sale Litigation is now before the Bankruptcy Court as adversary proceeding number 12-01855.

## Objection

13. 220 Laundry asserts the following grossly exaggerated amounts of damages relating to the Claim:

- For lost profits due to the Debtor's wrongful eviction of 220 Laundry, damages of $18,123,660;

- For misrepresentation of actual gas expense, damages of $11,576,340;

- For customer payments wrongfully converted by the Debtor, damages of $950,000;

- 4 -

- For diminution in value of assets, damages of $4,000,000;

- For damage to the business premises, damages of $1,000,000;

- For debtor's refusal to transfer control of its email address and website damages of $1,000,000;

- For wrongfully engaging in the laundry business after May 23, 2011, damages of $1,000,000;

- For insurance proceeds from Debtor's insurance policy with the Hanover Insurance Group, policy number ZDY 8924277 01, damages of $7,997,007;

- **Less:** (i) $13,396,739 (the amount due by 220 Laundry to the Debtor pursuant to the notes); and (ii) $400,000 (the amount due by 220 Laundry to the business broker pursuant to the Assets Purchase Agreement).

14. Notably, 220 Laundry has not provided any documentation to support any of its alleged damages. The amount of damages for each claim appears to be completely arbitrary and unsupported by either fact or evidence. The Debtor has reviewed the Claim and has found that it is completely without merit. Each of the baseless claims are addressed below. Significantly, 220 Laundry has failed to provide this Court with a copy of the Modified Agreement, which materially changed the relationship between the parties and provided a sound contractual basis for the Debtor's actions, which therefore cannot be characterized as contractual breaches by 220 Laundry.

15. As a preliminary matter, 220 Laundry asserts that it was not in default of the APA because it tendered, through Spitzer, payment to the Debtor prior to the occurrence of any material default such that 220 Laundry was wrongfully evicted. First, upon information and belief, a secretary employed by 220 Laundry presented an *unsigned*, and therefore valueless, check to the Debtor on the date payment was due. It was not until after 220 Laundry's material default under the APA, and the Debtor exercising its rights under the APA to retake control of

- 5 -

the business premises, that a valid, signed check was ever presented to the Debtor. Second, the Modified Agreement clearly provided that, if 220 Laundry was late on a payment under the notes and therefore in default, 220 Laundry would have no recourse against the Debtor. *See* Exh. B, §§ 50.3(1-4); 50.4(1-4); 50.4.5(1-3). For example, sections 50.3 and 50.4 of the Modified Agreement provide, in relevant part, as follows:

> *50.3* In the event that any of the following events, and only those events, occur, ***the Seller, in his sole discretion, may reverse this transaction****,* and in that event the Escrowee shall release the documents held under this Section to the Seller, and this transaction, including the lease, shall be deemed null and void.
>
> *50.3.1* The Purchaser is not current as to the payments under any note referenced in Section 4 above.
>
> *50.3.2* The Purchaser is in material default of the Lease, provided that the Seller provides written notice of said default, and the Purchaser is afforded reasonable time to cure said default, if curable.
>
> *50.4.4* ***In the event of such default, it will be deemed as if the sale had not occurred, and all assets transferred hereunder will be deemed to have remained the property of the Seller***.
>
> *50.4.5* In the event of such default, the Lease shall be deemed to have terminated by mutual consent of the parties on the date of such default.

16. Because 220 Laundry defaulted under the notes, in accordance with the Modified Agreement, the Debtor reversed the transaction, the sale was deemed as if it had not occurred and all assets transferred to 220 Laundry were deemed to have remained the property of the Debtor. In addition to the Modified Agreement, 220 Laundry also omitted to attach the Notice of Default issued by the Debtor and 220 Coster LLC, which is attached hereto as <u>Exhibit C</u>. A review of the Modified Agreement makes clear that the Debtor properly exercised its rights

under the APA to reverse the transaction and evict 220 Laundry after its default under the notes, thereby preventing further damage and deterioration to the Debtor's business.

17.     220 Laundry claims damages in the amount of *$11.5 million* allegedly as a result of the Debtor's misrepresentations related to Consolidated Edison Company of New York, Inc. ("Con Edison") charges.  However, the Debtor provided 220 Laundry with relevant information regarding the Con Edison bills and 220 Laundry was given adequate time to conduct its diligence of the business.  Moreover, the Debtor entered into a settlement and resolved all of its issues with Con Edison.  There is no representation or warranty by the Debtor in the APA concerning the payment or amount of Con Edison bills.  Accordingly, any argument by 220 Laundry that the APA was breached as a result of any such alleged misrepresentation by the Debtor is a red herring.  In addition, 220 Laundry never provided the Debtor with a notice of the default that it alleges occurred.  Even assuming, *arguendo*, that the Debtor was in default, any alleged damages sustained by 220 Laundry are grossly overstated in the Claim.  220 Laundry's Claim sounds in fraud in the inducement.  Under New York law, a defrauded party to a contract "may either elect to disaffirm the contract by prompt rescission or stand on the contract and thereafter maintain an action at law for damages attributable to the fraud." *Big Apple Car v. City of New York*, 204 A.D.2d 109, 110-11 (1st Dep't. 1994); *see also Fitzgerald v. Title Guarantee & Trust Co*, 290 N.Y. 376, 379 (1943) ("In New York, a party who entered into a contract induced by fraudulent representation had three remedies open to him[:]  1). He might rescind the contract and sue in an action at law to recover the consideration with which he had parted[;] 2). He might bring an action in equity to rescind the contract and in that action have full relief[;] . . . [or] 3). He might retain what he had received and bring an action at law to recover the damages sustained.").  In essence, the damages resulting from a claim of fraud in the inducement are calculated by

ascertaining the amount of money necessary for the party to be in the position it would have been but for the fraudulent inducement. 220 Laundry operated the business for approximately four months and was in default of its obligations under the APA. Accordingly, a claim for damages in excess of $11.5 million as a result of an alleged misrepresentation of the cost of utility services is completely unsupported by New York law, the facts of this case and the terms of the APA.

18. 220 Laundry claims damages in excess of *$18 million* based on lost profits due to the Debtor's alleged wrongful eviction of 220 Laundry. There was never a wrongful eviction of 220 Laundry by the Debtor. 220 Laundry was in material default under the APA and, as a result, the Debtor properly exercised its rights under the clear and unambiguous sections 50.3 and 50.4 of the Modified Agreement and evicted 220 Laundry to regain control of its business in order to save it from further deterioration.

19. 220 Laundry claims damages in the amount of $950,000 as a result of the Debtor's alleged "conversion" of customer payments to which 220 Laundry was allegedly entitled following 220 Laundry's eviction from the premises. However, 220 Laundry was in material default under the APA and the Debtor properly evicted 220 Laundry and regained control of the business premises and assets. Moreover, contrary to 220 Laundry's assertions, upon information and belief, 220 Laundry collected from and gave credits to customers in excess of $100,000. In addition, the Debtor paid in excess of $200,000 in outstanding bills incurred by 220 Laundry that 220 Laundry was obligated, but failed to pay. Because 220 Laundry had very little cash at the time the sale was consummated, pursuant to section 49 of the Modified Agreement, the Debtor also agreed to permit 220 Laundry to collect the Debtor's accounts receivable and pay the Debtor back in monthly installments in the amount of one-twelfth of the total receivables each month. This essentially amounted to an interest-free loan in the amount of

approximately $700,000, the total outstanding receivables at the time of the closing. 220 Laundry further defaulted under section 49 of the Modified Agreement by failing to pay to the Debtor required monthly payments. As a result of these defaults by 220 Laundry, the Debtor lost a substantial amount of money in connection with the accounts receivable and has substantial claims and set-off rights against 220 Laundry. Accordingly, 220 Laundry's claims have no merit and it is actually 220 Laundry's defaults that have resulted in substantial losses for the Debtors.

20. In another outrageous overstatement, 220 Laundry claims that a diminution in value of the business' assets and damages to the business premises in the amount of $4 million occurred while 220 Laundry operated the business and that these damages are somehow attributable to the Debtor because of the consulting arrangement entered into by the parties, pursuant to which the Debtor's principals were to provide advice to 220 Laundry regarding the operation of the business. The APA did not require the Debtor to repair damages to the premises or the business assets. The Debtor and its principals, as agreed, advised 220 Laundry with respect to the management of the business, which advice was ignored by 220 Laundry. As a result of 220 Laundry's mismanagement of the business, the business assets and the relationships with customers deteriorated. 220 Laundry's managerial failures cannot be the basis for a claim against *the Debtor*.

21. 220 Laundry claims that it suffered economic damages of $1 million as a result of the Debtor's alleged failure to transfer control of its email address and website to 220 Laundry. Even setting aside the fact that 220 Laundry does not even bother to explain why this claim triggered damages in the amount of $1 million, the allegations by 220 Laundry are baseless. Email addresses were established for 220 Laundry and its principals and 220 Laundry had the ability to manage its website through Boris Markus. Upon information and belief, the parties

verbally agreed that Mr. Markus would control the password to the website until 220 Laundry paid in full the required down payment under the APA. Mr. Markus assisted 220 Laundry with the management of its website, but 220 Laundry failed to pay the down payment in full. Accordingly, 220 Laundry has shown absolutely no basis for its claim that it was somehow damaged in the outrageous amount of *$1 million*.

22.     220 Laundry further claims it suffered damages in the amount of $1 million as a result of the Debtor's alleged unlawful management of the laundry business after the Debtor evicted 220 Laundry and started to manage the Debtor's business operations. As stated above, the Debtor properly exercised its rights under the APA when it evicted 220 Laundry following 220 Laundry's material defaults. Moreover, there is no documentation or other support for this arbitrary claim.

23.     220 Laundry finally claims that it is entitled to a portion of the insurance proceeds totaling nearly $8 million payable to the Debtor as a result of the Fire. However, the proper recipient(s) under the Debtor's insurance policy with the Hanover Insurance Group, policy number ZDY 8924277 01, are the Debtor, 220 Coster LLC and other named insureds as described therein, all of which have a superior interest in the proceeds of the policy. 220 Laundry is not the owner of the business and has no rights to the insurance proceeds.

24.     In sum, 220 Laundry has filed a claim against the Debtor in a grossly overstated amount that is completely without support and borders on the unconscionable. In actuality, 220 Laundry owes the Debtor a substantial amount of money, a position which the principals of 220 Laundry have become accustomed to in their capacity as principals of other entities. 220 Laundry defaulted under multiple sections of the APA and a review of the APA demonstrates not

only that the Debtor properly exercised its contractual rights when it regained control of its business, but also that there is no basis in law or in fact to support the Claim.

### Reservation of Rights

25. The Debtor hereby reserves its rights to supplement its objection to the Claim on any other grounds the Debtor may identify at a later date. Additionally, the Debtor expressly reserves the right to amend, modify or supplement this Objection and to file additional objections to other claims (filed or not) which may be asserted against the Debtor by 220 Laundry.

WHEREFORE, the Debtor respectfully requests that the Court expunge and disallow the Claim in its entirety.

Dated: December 10, 2012
      New York, New York

                                    SHAFFERMAN & FELDMAN LLP

                                    By: /s/ Joel M. Shafferman

                                    Joel M. Shafferman
                                    286 Madison Avenue, Suite 502
                                    New York, New York 10017
                                    Telephone: (212) 509-1802

                                    *Counsel for the Debtor*