UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

In re:                                    Chapter 11
                                          Case No. 12-11560 (ALG)
**B&M LINEN CORP.,**

                Debtor.
------------------------------------------------------X

## RESPONSE BY 220 LAUNDRY, LLC TO
## OBJECTION BY DEBTOR TO PROOF OF CLAIM

Preliminary Statement

220 Laundry, LLC, a creditor in this bankruptcy case and a party to a related Adversary Proceeding (No. 12-01885-alg) ("the Adversary Proceeding"), by its undersigned counsel, submits this Response to Debtor's Objection to 220 Laundry's Proof of Claim.

Relevant Prior Proceedings

At proceedings before the Court on December 11, 2012, the Court was informed of 220 Laundry's intention to file, on or before December 17, 2012, a motion for partial summary judgment, fundamentally addressing the competing claims of material breach of contract which are at the core of the Adversary Proceeding.

In colloquy with the Court, the Court indicated, without limiting itself, that it would likely consider the competing positions on the motion for partial summary judgment and the competing positions as to the Proof of Claim simultaneously, to the extent of any overlap.

1

The motion for partial summary judgment was in fact filed on December 17, 2012. In proceedings before the Court on January 9, 2012, the Court directed that a response to the motion for partial summary judgment be filed on or before February 15, 2012, and set March 5, 2012 as the hearing date for the motion.

As set forth more fully below, the primary response to the Objection to 220 Laundry's Proof of Claim is, as the Court indicated would be likely, the position of 220 Laundry as set forth in its motion for partial summary judgment. As such, so as not to burden the Court unnecessarily, that position will be summarized briefly below, but not set forth in full. The Court is respectfully referred to the written submissions by 220 Laundry constituting that motion.

Following that summary, 220 Laundry will respond to those aspects of the Objection which are not addressed by that motion.

<u>Summary of 220 Laundry's Position on the Motion for Partial Summary Judgment</u>

220 Laundry's fundamental support for its Proof of Claim is detailed in the documents constituting its motion for partial summary judgment. The Court is respectfully referred to Docket Nos. 3-11 in Adversary Proceeding No. 12-01885-alg.

As set forth fully therein, it is undisputed that the closing of an Assets Purchase Agreement took place, effective May 23, 2011, with Debtor as Seller and 220 Laundry, LLC as Purchaser. 220 Laundry maintains that as of September 27, 2011 it had satisfied approximately $1 million of the total purchase price of $10.6 million, and that it was in material compliance with its purchase obligations. On that date, however, Debtor and 220 Coster, LLC, the owner of the business premises being leased to 220

Laundry, evicted 220 Laundry from the premises, claiming a material breach on the part of 220 Laundry.

220 Laundry rejected and protested the claim of breach, but for reasons set forth more fully in the referenced motion, left the business premises, reserving all rights.

Most significantly, proof has emerged since that eviction that Debtor was in material breach of its obligations under the Assets Purchase Agreement and Modification Agreement even before 220 Laundry first took possession of the business premises. This is so because Seller/Debtor, contrary to its contractual due diligence obligations and its common law duties, concealed from Purchaser a systematic theft by Debtor of natural gas from the utility supplier, Consolidated Edison ("Con Ed") and the energy service company which, through Con Ed, provided that natural gas.

Not only is the proof of this systematic, long-running theft clear, but 220 Laundry maintains that it is clear to a summary judgment standard. Further, Con Ed and Debtor have, in multiple appearances before the Court, quantified, at a minimum, the magnitude of the theft of services in such a way as conclusively establishes the materiality of Debtor's breach. Whereas 220 Laundry maintains that the certainty, magnitude and timing of the undisclosed theft of services as a matter of law obviates the need for the Court even to consider any competing claim of material breach on the part of 220 Laundry, there is in no event any material breach on the part of 220 Laundry. This too is addressed fully in the referenced motion.

The fundamental validity of 220 Laundry's Proof of Claim is thus detailed in its motion for partial summary judgment, to which the Court is respectfully referred.

## Supplemental Response to Debtor's Objections

220 Laundry will recite here additional support for its Proof of Claim in response to Debtor's Objection thereto. For ease of possible future reference, the responses will be enumerated.

1. At page 1, Paragraph 1, Debtor asserts:

> Surprisingly, and conspicuously absent from the claim, is the fact that 220 Laundry was obligated to pay more than $10 million to Debtor but, to date, has paid approximately $600,000.

Three pages later, however, at Paragraph 13 of its Objection, Debtor expressly acknowledges that 220 Laundry's Proof of Claim <u>does</u> include a credit of $13,396,739 as the amount unpaid under the purchase notes as drafted. More particularly, Paragraph 13 of the Objection begins: "220 Laundry asserts the following grossly exaggerated amounts of damages relating to the Claim:". There follows, in Debtor's Objection, nine bullet points, the last of which is: "**Less**: (i) $13,396,739 (the amount due by 220 Laundry to the Debtor pursuant to the notes. . .)". [emphasis in original]

Thus, contrary to Debtor's contention, at page 1, that a reference to 220 Laundry's note obligations was "conspicuously absent", reference to 220 Laundry's note obligations is conspicuously included in the Proof of Claim, and Debtor's Objection in this regard is conspicuously frivolous. How did the text of Paragraph 1, quoted above, withstand even a cursory proofreading of Debtor's Objection before filing?

To clarify 220 Laundry's position as to its note obligations, the Proof of Claim identifies a $11,576,340 item as the sum believed, on the basis of information currently available to 220 Laundry, to be the amount by which natural gas utilization costs as represented by Seller during due diligence would vary from actual gas utilization over

4

the 18 year period covered by the $8.6 million promissory note. Having separately accounted for that and other damage items in its Proof of Claim, 220 Laundry addresses without adjustment, its obligations under the promissory notes.

As to Debtor's reference to $600,000 having been paid, the statement is in one sense correct, but to date, by agreement between B&M Linen and 220 Laundry, 220 Laundry assumed a $500,000 obligation on the part of B&M to pay a broker involved in the sale transaction. Thus, the total consideration received by B&M to date exceeds $1 million.

2.  At Paragraph 9 of its Objections, Debtor, referencing the two purchase notes of $1 million and $8.6 million, states: "Each note was personally guaranteed by Spitzer, Michael Steinberg, and Adam J. Teller, the principals of 220 Laundry."

The statement is not accurate as to Adam J. Teller. Mr. Teller signed no such guarantee. The action against Mr. Teller, filed in State Court, and perpetuated in this one, has been, and continues to be, frivolous.

3.  At Paragraph 14, Debtor makes the conclusory assertion that "220 Laundry has not provided any documentation to support any of its alleged damages." To the contrary, as exhibits to its Proof of Claim, 220 Laundry submitted gas cost/usage spreadsheet calculations; theft of service inspection reports by Con Ed; five years of B&M federal tax returns; B&M's 2012 Operating Statement; insurance documentation; and various court filings.

Discovery in the state court proceeding could not, of course, go forward once the Petition was filed. Post-transfer to this Court, discovery is about to proceed.

5

4.  At Paragraph 15 of its Objections, Debtor asserts: "First, upon information and belief, a secretary employed by 220 Laundry presented an unsigned, and therefore valueless check to Debtor on the date payment was due." As is set forth more fully in 220 Laundry's summary judgment submission, the quoted statement, made upon information and belief, is not accurate. 220 Laundry did not employ any secretary authorized to tender checks on its behalf.

5.  At Paragraph 17 of its Objection, Debtor references the due diligence process, stating:

> However, the Debtor provided 220 Laundry with relevant information regarding the Con Edison bills and 220 Laundry was given adequate time to conduct its diligence of the business. Moreover, the Debtor entered into a settlement and resolved all of its issues with Con Edison.

The presentation of the actual utility bills did not *satisfy* Debtor's due diligence obligations, it *violated* them. Those bills were known by Debtor to have been generated by its systematic disabling of the utility meter. Debtor knew that the bills actually presented, did not, contrary to Debtor's due diligence obligations, accurately present to Purchaser the cost of doing business.

The presentation of the bills to 220 Laundry and 220 Laundry's review of them was not some prelude to due diligence, it was the due diligence process. Debtor had contractual obligations as to that process and it breached them.

As to the reference to a settlement between Debtor and Con Ed, in the first instance the settlement itself establishes, at a minimum, the magnitude of the misrepresentation to 220 Laundry of actual utility costs. Moreover, it does not appear that the settlement with Con Ed incorporates that portion of the monthly gas bill

attributable to the energy service company, a portion greater than Con Ed's share of a typical bill.

Further, the settlement is not only not binding on 220 Laundry, either in general or specifically as to the calculation of its claim, but 220 Laundry has affirmatively opposed Court approval of that settlement. Among other things, the granting by Debtor to Con Ed of a confession of judgment during the preference period should be voided as a matter of law.

6.   In that same Paragraph 17, Debtor purports to address remedies available to a party who has entered into a contract induced by fraud. In the first instance, while there was plainly fraud involved in the contracting process, 220 Laundry, in addition to fraud remedies, has all remedies available to it for breach of contract as well as other causes of action. But even in its circumscribed analysis, Debtor observes that 220 Laundry "might retain what [it] received and bring an action at law to recover the damages sustained."

Thus, Debtor concedes that if, for example, it is shown that in the sale transaction 220 Laundry received ownership of the laundry business; a commitment by B&M not to compete with it; machinery used in the business; the right to service what had been B&M's customers and receive payments from them; etc., then 220 Laundry may keep those things, that is "retain what it received". It follows that to the extent that any of the things received no longer exists or was damaged, and there was insurance coverage applicable to what was received, that coverage would be for the benefit of 220 Laundry, not the entity which sold them.

7

Also "received" in the transaction were leasehold rights. Debtor therefore acknowledges that, absent a material breach on 220 Laundry's part, 220 Laundry had the right to possession garnered by the lease with 220 Coster. It follows that if there was no material breach, 220 Coster's eviction of 220 Laundry was wrongful, and as Debtor concedes, a damage action would lie.

In most summary fashion, 220 Laundry is keeping what it received and bringing an action to recover damages, just as Debtor, even in its excessively limited assessment of 220 Laundry's rights, concedes is proper.

The response to that aspect of Paragraph 17 is thus, in essence, there is no valid objection stated.

7.    At Paragraph 19, Debtor addresses 220 Laundry's claim for conversion of receivables. It is a simple fact that when, on September 27, 2011, 220 Laundry was evicted from the premises, it had operated the facility for four months and three days. During that time it had serviced and billed customers. Some bills had been paid and others had not, as would be the "snapshot" situation for almost any business of that type. Parenthetically, the same situation existed in Debtor's favor when 220 Laundry first commenced operations. 220 Laundry fully intends to give accounting effect to both sides of this equation and its Proof of Claim does not state otherwise.

8.    Paragraph 21 of Debtor's Objection is a tortured effort to defend a straightforward breach of its contractual obligation to transfer control of the company email address and website to 220 Laundry as Purchaser. Like all other assets used in the business, these assets were required to be transferred to Purchaser at closing. Essentially admitting its breach, Debtor states: "220 Laundry had the ability to manage

8

its website through Boris Markus." [emphasis added]. There is then some statement made "upon information and belief" as to a verbal agreement.

The sale agreement contained the entire understanding of the parties. The email address and website, as appears admitted, belonged to 220 Laundry upon the closing of the sale transaction. There is no provision in the agreement as to Boris Markus, or anyone else, managing the website, and such an arrangement would have been an absurdity. The objection is frivolous.

9.  As to Paragraph 23 of the Objection, there is no basis for Debtor's conclusory assertion as to which entity has a "superior interest" in the proceeds of insurance. This is a matter which will be left to proof. It is a fact that 220 Laundry's lawful acquisition of the business and its business assets will certainly entitle it, to the exclusion of others, to certain insurance proceeds. It is also the case that proof of 220 Laundry's position will entail the conclusion that it was wrongfully evicted by 220 Coster. Although that entity is not the Debtor in this proceeding, it is before this Court by way of the transferred Adversary Proceeding, and 220 Laundry reserves all rights against that entity, including as to funds it might otherwise receive but be obligated to pay to 220 Laundry by reason of any judgment.

January 10, 2012

COTI & SUGRUE

By _Stephen R. Sugrue_
Stephen R. Sugrue
59 Grove Street Suite 1F
New Canaan, CT 06840
203-966-5817
Counsel for 220 Laundry, LLC