**MCDERMOTT WILL & EMERY LLP**
340 Madison Avenue
New York, New York 10173-1922
Timothy W. Walsh
Telephone: (212) 547-5400

*Counsel for Miron Markus, Boris Markus and 220 Coster, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

| | |
|---|---|
| In re: | : |
| | : Chapter 11 |
| B&M LINEN CORP., | : |
| | : Case No. 12-11560 (ALG) |
| Debtor. | : |
| | : |

------------------------------------------------------------- X

# EMERGENCY MOTION TO RECONSIDER COURT'S INTERIM ORDER

Miron Markus, Boris Markus and 220 Coster, LLC ("220 Coster", and together with Miron and Boris Markus, "Markus/Coster") file this emergency motion (the "Emergency Motion") to reconsider the Court's Interim Order dated October 18, 2013 (the "October 18 Order") partially granting Markus/Coster's request for the release of additional Building Policy proceeds to pay for emergency asbestos abatement and demolition work.[1] Markus/Coster respectfully represent as follows:

---

[1] All undefined capitalized terms used herein shall have the meanings provided in the Motion of Markus/Coster for an Order Modifying January 11, 2013 Order Regarding Insurance Proceeds (ECF No. 163) or the Declaration of Miron Markus (ECF No. 189).

1. Markus/Coster respects the Court's decision to enter the October 18 Order which partially granted Markus/Coster's request—over the objection of 220 Laundry—to release a portion of 220 Coster's Building Policy proceeds to pay for emergency asbestos abatement and demolition work. However, the proceeds being released pursuant to the October 18 Order are not sufficient to allow Markus/Coster to commence emergency work at the Premises.

2. For example, although the Court granted the release of insurance proceeds to pay for necessary permits in advance of construction work, Markus/Coster are unable to obtain such permits on their own. It is the architects who must prepare and file applications for permits and therefore, without the assistance of architects, work cannot commence. As set forth in the Declaration of Miron Markus (the "Markus Declaration") that was filed in connection with Markus/Coster's initial request and is attached hereto as Exhibit A, architects' fees are expected to total approximately $195,960.

3. Although Markus/Coster would like to begin work immediately, they may be unable to do so even with the release of funds sufficient to cover architects' fees. 220 Coster is extremely apprehensive to enter into contracts in excess of one million dollars without the assurance that it has the funds in place to pay for all necessary work. 220 Coster is not earning any income and its insurance proceeds are its only source of funding for this emergency asbestos abatement and demolition work. Moreover, even if 220 Coster assumed the great risk of entering into a contract without funds in hand to pay for all services contemplated thereunder, it will almost certainly have difficulty persuading its contractors to commence work without the assurance that 220 Coster is in possession of funds to pay for all work. At a minimum, in order for the commencement of work at the Premises to be a possibility, Markus/Coster require funds to pay for architects' fees.

4. As the Markus Declaration explained, it is necessary for 220 Coster to immediately commence emergency asbestos abatement and demolition work. Based on discussions Markus/Coster have had with potential contractors, a critical element of the abatement process involves circulating water through a decontamination chamber, which requires temperatures to be substantially above freezing in order to operate properly. Specifically, Markus/Coster have been informed that once temperatures drop to thirty-seven (37) degrees Fahrenheit, water lines will become dangerously close to freezing and abatement work will be immediately halted. This is why it is critical to the overall construction timeline that abatement and demolition work be completed by the end of the year.

5. If the asbestos abatement work, demolition and cleaning of the building is not completed before temperatures drop, the next phase in the project—steel work—cannot be performed, and all work at the Premises will immediately cease until at least March 2014. The result will be irreversible harm to both 220 Coster and the rebuilding effort. As explained in the Markus Declaration, the asbestos abatement and demolition work is expected to take approximately seventy-five (75) days and must be done concurrently. When abatement crews deem an area of the Premises safe, demolition work will commence in that area. Demolition costs are expected to be approximately $447,308. This work must commence immediately for there to be any hope that it will be completed by the end of the year.

6. Markus/Coster appreciate the Court's desire to maintain the relative status quo prior to the confirmation hearing and they are working diligently with the Debtor to bring a conclusion to this bankruptcy case and confirm their Joint Plan of Reorganization. Markus/Coster also understand that the confirmation hearing is nearly a week away and would not be filing the instant Emergency Motion unless they felt it was absolutely necessary to do so.

Markus/Coster simply need access to certain of their Building Policy proceeds to commence emergency work at the Premises and submit that granting this request will not upset the status quo.  Accordingly, Markus/Coster respectfully request that the Court reconsider the October 18 Order and grant the release of proceeds in the full amount detailed in the Markus Declaration.

       7.      Markus/Coster hereby expressly reserve the right to amend, modify or supplement this Emergency Motion.

DM_US 45957994-2.091784.0011

WHEREFORE, Markus/Coster respectfully request that this Court reconsider its October 18 Order and enter an order granting Markus/Coster's request for the release of additional Building Policy proceeds in the full requested amount of $1,277,275.99.

Dated: October 21, 2013  
       New York, New York

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

By: /s/ Timothy W. Walsh

Timothy W. Walsh, Esq.  
340 Madison Avenue  
New York, New York 10173  
Telephone: (212) 547-5400

*Counsel for Miron Markus, Boris Markus and 220 Coster, LLC*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
In re:                                                           :
                                                                 :   Chapter 11
B&M LINEN CORP.,                                                 :
                                                                 :   Case No. 12-11560 (ALG)
                      Debtor.                                    :
                                                                 :
-------------------------------------------------------------- X

**DECLARATION OF MIRON MARKUS IN SUPPORT OF AN ORDER FURTHER
MODIFYING JANUARY 11, 2013 REGARDING INSURANCE PROCEEDS**

Pursuant to 28 U.S.C. § 1746, I, Miron Markus, hereby declare as follows:

1.      I am the President and 100% shareholder of the debtor B&M Linen Corp. (the "Debtor") and 220 Coster, LLC ("220 Coster"), the Debtor's landlord. I am fully familiar with the facts and circumstances contained herein.

2.      On April 16, 2012, the Debtor filed a petition under chapter 11 of title of the United States Code the ("Bankruptcy Code").

3.      On July 30, 2012, a four-alarm fire destroyed the premises where the Debtor's business was conducted (the "Fire").

4.      220 Coster's only source of income was the Debtor's approximately $40,000 in monthly rent payments.

5.      There are two insurance policies maintained by the Debtor and 220 Coster: one covering the building and loss of rental income and another covering the contents of the building.

6.      The first policy, which is the subject of the recent motion to modify this Court's January 11, 2013 Order regarding insurance proceeds, is a Building Owner Lessors Risk Policy with Massachusetts Bay Insurance Company, policy number ZDY 9309229 00 ("the "Building Policy"), with a combined commercial property and business income insurance limit of $6,104,000. As 220

Coster is, and always was, the landlord and owner of the building, it is entitled to all proceeds under the Building Policy.

7.      Since the Fire, the Debtor has not operated and has been unable to pay 220 Coster its monthly rent, which served as 220 Coster's only source of income used to pay its mortgagees.  As a result, I was forced to pay the mortgagees and property taxes out of pocket for months and have paid other necessary expenses out of pocket for nearly fourteen months.

8.      Because 220 Coster and the Debtor have been unable to generate income, the building owned by 220 Coster remains in considerable disrepair.  Indeed, because 220 Coster has been unable to access the vast majority of its insurance proceeds from the Building Policy, the building continues to deteriorate and has since the Fire.

9.      For example, the building premises are the subject of repeated acts of vandalism, vagrants have attempted to live in the premises and remove property from the premises (creating a substantial risk of a damaging fire as the weather gets colder and these individuals consider starting fires for warmth), the building constantly floods, the building is exposed to the elements and has been sustaining weather-related damage, and additional post-Fire remediation activities must be completed before the premises can be considered safe to occupy.  To that end, if such certain remediation activities are not completed in a timely manner, 220 Coster may be subject to fines by state and federal environmental agencies.  Preventing 220 Coster from obtaining access to additional required Building Policy proceeds, which 220 Coster alone is entitled to, will leave 220 Coster unable to remedy this continued deterioration.

10.     At a hearing on October 2, 2013, the Court granted, in part, the request of 220 Coster, Boris Markus and myself (collectively, "<u>Markus/Coster</u>") to release Building Policy proceeds and

indicated that, if Markus/Coster could demonstrate that additional funds were needed immediately, the Court would provide such further relief.

11. It has been more than a year since the Fire destroyed the building and now that the majority of Building Policy proceeds have been remitted to the Court Registry, 220 Coster should be able to begin construction on the premises. The first step of this process is continuing necessary asbestos abatement work.[1] I have been informed that this abatement work may take up to a month and must be completed within approximately 30 days because of the strict timeline contractors are facing as winter approaches. As soon as parts of the building become relieved of asbestos contaminants, demolition crews will enter the premises. The demolition is expected to take an additional 30-45 days. Accordingly, it is anticipated that the abatement and demolition process will take approximately 75 days. If work began today, this would mean an approximate completion date of late-December. I have been informed such asbestos abatement and demolition work is extremely difficult to complete during the winter months.

12. It is critical for the construction timeline that the building is in "broom swept" condition by January 1, 2014, which will enable the next phase of construction, necessary steel work, to proceed as planned. I was informed that this is the case because, unlike other services, steel construction work can proceed relatively unaffected by the cold and unpredictable winter weather. The steel construction work is expected to take approximately 60 days. At the end of this period, and as the weather begins to warm, construction crews will be able to start necessary masonry and utilities work.

13. At this time, I am not requesting insurance proceeds that are sufficient to finance the entire construction project, or even any work contemplated in 2014. Rather, I am simply asking for

---

[1] Recently, the Court granted the release of $121,504.57 from the Court Registry to pay Environmental Appraisers and Builders LLC for asbestos abatement work it previously performed. The funds I am requesting now are for additional required asbestos abatement work.

- 3 -

Pg 10 of 15

the release of proceeds to fund the asbestos abatement and demolition projects (including necessary fees and permits) that must commence immediately to be completed by the New Year and prevent catastrophic delays.

14.    Markus/Coster will need to demonstrate to the contractors that 220 Coster has the finances in place to complete this work.  Attached hereto as Exhibit A are cost estimates for the necessary asbestos abatement and demolition work as well as required builder's risk insurance. Markus/Coster is requesting a smaller amount of proceeds be released with respect to demolition work than is estimated by the contractor because we believe we can obtain a discount.  Accordingly, I respectfully request that the Court allow the immediate release of the following additional amounts from 220 Coster's Building Policy proceeds being maintained in the Court Registry:

- ➢    Necessary Permits: $48,990
- ➢    Architects' Fee: $195,960
- ➢    Builder's Risk Insurance Policy: $35,000
- ➢    Asbestos Abatement: $550,017.99
- ➢    Demolition Costs: $447,308

**Total:  $1,277,275.99**

15.    Without access to these Building Policy insurance proceeds, both 220 Coster and I, individually, will face financial ruin and the construction on the building will face calamitous delays. The release of these additional funds should finally enable 220 Coster to begin rebuilding or replacing the property without any further delay.

16.    I would also note that giving 220 Coster access to these insurance proceeds will not prejudice any other party in the Debtor's bankruptcy case.

DM_US 45517226-3.091784.0011

**CONCLUSION**

For the foregoing reasons, I respectfully request that the Court further modify its January 11, 2013 Order regarding insurance proceeds and permit the release of additional Building Policy proceeds in the amount of $1,277,275.99 from the Court Registry directly to 220 Coster, the rightful recipient of these funds.

Dated: October 9, 2013

/s/  Miron Markus
Miron Markus

# EXHIBIT A



# Environmental Appraisers & Builders

141-07 20th Ave Suite 603
Whitestone, NY 11357
Ph:  (718) 357-9191
Fax: (718) 357-2045
Email: marc@eabllc.org

October 3, 2013

Miron Markus, Miron & Sons Linen Service
220 Coster Street
Bronx, NY 10474
Attn: Boris Markus

RE: 220 Coster Street
Asbestos Abatement

Scope of Work as follows:

- Clean up of the East and West section linens and equipment.

- Roof Removal of West Roof section.

- Work duration 30 days.

- All work is pursuit to DEP Variance Tru No. TRU0148BX13

Payment Schedule

| | |
|---|---|
| Job Total: | $550,017.99 |
| 10% Due upon Signing : | $55,001.80 |
| 3 Progress Payments : | $150,000.00 |
| | $150,000.00 |
| | $150,000.00 |
| Due Upon Delivery of All Final Documents: | $45,016.19 |

Accepted and Approved  _____




**133 WEST 25th STREET - 6th FLOOR - NY, NEW YORK 10001**

October 9, 2013                                    Proposal # 13-002

Boirs Markus
Miron & Sons Linen Service
200 Closter Street
Bronx, NY

Re:     Miron & Sons Linen Service
        220 Closter Street
        Main floor

Dear Mr. Markus,

We propose to furnish all labor and materials to complete the following work for the sum of:

Demolition of fire damage, stainless steel, lardromat equipment and materials
Removal of all debris.

**Total Proposal Amount:**                         $658,752

Please note that price will be revised pending design drawings.

Should you have any questions or require any additional information regarding this proposal, please do not hesitate to contact me.

Sincerely,

Antonio Tutivo

**O+D Builders, LLC**

Approved By: _____
Title: _____
Date: _____

T: 212.929.8320 - F: 646.380.4181 - web: O+Dbuilders.com

**Arcadia Group Inc.**
Insurance Solutions

October 9, 2013

Boris Markus, V.P.

220 Coster Corp. LLC.

Via email

Re: 220 Coster Location Builders Risk Coverage

Mr. Markus

Please be advised that that the approximate cost of the builders risk for the 220 Coster restoration will be approximately $35,000. This figure is based upon the scope of work as well as the current compromised position of the building.

Please feel free to contact me should you have any further questions.

Best Regards,

*Michael Apt*

Michael Apt

aptarcadia@earthlink.net