| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | | Hearing Date: October 29, 2013<br>Hearing Time: 10:00 a.m. |
| ------------------------------------------------------- x | | |
| In re | : | Chapter 11 |
| B & M LINEN CORP., | : | Case No. 12-11560 (ALG) |
| Debtor. | : | |
| ------------------------------------------------------- x | | |

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE
THIRD AMENDED PLAN OF REORGANIZATION**

TO THE HONORABLE ALLAN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"), respectfully submits this objection (the "Objection") to the "Third Amended Joint Plan of Reorganization of B&M Linen Corp. Dated September 20, 2013" (the "Plan") proposed by B&M Linen Corp. (the "Debtor"), Miron Markus, Boris Markus and 220 Coster, LLC (collectively, the "Plan Proponents"). In support of the Objection, the United States Trustee respectfully states as follows:

## I. PRELIMINARY STATEMENT

The United States Trustee objects to confirmation of the Plan because the Plan Proponents have failed to meet their burden of proof to show that the Plan satisfies Section 1129 of the Bankruptcy Code. Specifically, the Plan impermissibly includes release and exculpation provisions that benefit among other recipients, the Debtor's sole shareholder, its officer, and its non-debtor parent without demonstrating that such release terms comply with Second Circuit law or the Bankruptcy Code. Accordingly, the United States Trustee respectfully requests that the Court narrow the release and exculpation provisions and/or require compliance with the law of

this Circuit and the Bankruptcy Code.

## II. FACTUAL BACKGROUND

**A.     General Background**

1.     On April 16, 2012 (the "Petition Date"), the Debtor commenced a voluntary case under Chapter 11 of the Bankruptcy Code.  ECF Doc. No. 1.

2.     As of the Petition Date, the Debtor was a New York corporation engaged in the commercial laundry business located at 220 Coster Street in Bronx, New York (the "Debtor's Premises").  ECF Doc. No. 6, ¶¶ 2, 16–17.

3.     Miron Marcus is the sole owner of the Debtor.  See Statement of Financial Affairs, ECF Doc. No. 10, ¶ 21(b).

4.     The Debtor is managed by Miron Marcus, Boris Marcus, and Michael Marcus. See Certification of Miron Marcus Pursuant to Local Bankruptcy Rule 1007-2, ECF Doc. No. 6.

5.     As of the Petition Date, the Debtor rented the Debtor's Premises from 220 Coster LLC.  Schedule G, ECF Doc. No. 9.

6.     220 Coster is owned by Miron Marcus and Boris Marcus.  See Insurance Motion, ECF Doc. No. 137.

7.     On September 8, 2012, the United States Trustee filed a motion seeking the conversion of the case to Chapter 7, or in the alternative, the appointment of a Chapter 11 Trustee.  ECF Doc. No. 50.

**B.     The July 30 Fire at the Debtor's Premises**

8.     On July 30, 2012, a four-alarm fire (the "July 30 Fire") destroyed the Debtor's Premises.  ECF Doc. No. 29.

9.     On August 16, 2012, the Court entered an order requiring that any insurance

2

proceeds from the July 30 Fire be deposited in an escrow account maintained by Debtor's counsel. ECF Doc. No. 32.

10. To date, the cause of the July 30 Fire has not been determined.

**C.    The Plan and Release Terms**

11. On October 12, 2012, the Plan Proponents filed a Disclosure Statement (the "Disclosure Statement") and Joint Plan of Reorganization (the "Plan") with Miron Marcus, Boris Marcus, and 220 Coster. ECF Doc. Nos. 69 and 70.

12. On February 8, 2013, April 2, 2013, and September 20, 2013, the Disclosure Statement and Plan were amended. ECF Doc. Nos. 104, 105, 133, 134, 166, and 167.

13. On October 3, 2013, the Court entered an order approving the Disclosure Statement. ECF Doc. No. 180.

14. The Plan defines the "Released Parties" as follows: "(a) the officers, directors, and employees who have served, or been employed or retained by the Debtor, including without limitation, Miron Markus and Boris Markus; (b) such parties' respective employees, agents, counsel and advisors and any other professionals retained by order of the Court; and (c) 220 Coster, LLC." Plan, Art. I, ¶ 57.

15. The Plan contains the following exculpation provision to the Released Parties:

> Except as otherwise provided with respect to any Person in any document executed by such Person contemplating the transactions described in the Plan, <u>the Debtor, together with the Released Parties, are released and discharged from any and all claims, obligations, rights, causes of action and liabilities relating to the Debtor, this Case, the formulation, negotiation, preparation, confirmation, implementation and administration of the Plan or any consent, action, omission, transaction or business dealing from and after the Petition Date and prior to the Effective Date</u>; provided, however, that the Released Parties shall not be released from claims arising under (a) the Internal Revenue Code, or any state, city or municipal tax code; (b) the environmental laws of the United States, any state, city or municipality; (c) any criminal laws of the United States, any state, city or municipality; (d) this Plan; or (e) actions related to wilful misconduct, gross

3

negligence, misuse of confidential information that causes damages, breach of fiduciary duty and ultra vires acts. Any of the foregoing parties in all respects shall be entitled to rely on the advice of counsel with respect to any of the foregoing. With respect to Released Parties that are attorney professionals, such professionals shall not be released from any violations of the Code of Professional Responsibility. From and after the Effective Date, except as otherwise provided under this section, all holders of Claims or Interests shall be permanently enjoined from commencing or continuing in any manner any suit, action or other proceeding, on account of or respecting, any Claim or Interest.

Plan, Art. VI, ¶ 84 (emphasis added).

16. The Plan contains the following release provision to the Released Parties:

Except as otherwise specifically provided by the Plan, for good and valuable consideration, including the services and agreements to facilitate the expeditious reorganization of the Debtor and the implementation of the Restructuring Transactions contemplated by the Plan, on and after the Effective Date, the Released Parties shall be deemed released by the Debtor, the Reorganized Debtor and holders of Claims and Interests from any and all claims, obligations, rights, suits and causes of action whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that the Debtor, the Estate or such person or entity would have been entitled to assert whether directly, indirectly, derivatively or otherwise, based in whole or in part upon any action, omission, transaction, agreement, event, conduct or other occurrence taking place on or before the Effective Date in any way relating or pertaining to the Debtor, the Estate or the Case; provided, however, that the Released Parties shall not be released from claims arising under (i) the Internal Revenue Code, or any state, city or municipal tax code; (ii) the environmental laws of the United States, any state, city or municipality; (iii) this Plan; (iv) any criminal laws of the United States, any state, city or municipality; and (v) actions related to wilful misconduct, gross negligence, misuse of confidential information that causes damages, breach of fiduciary duty and ultra vires acts; provided further, however, that the foregoing limitation on releases shall not apply to claims held by or belonging to the Debtor. With respect to Released Parties that are attorney professionals, such professionals shall not be released from any violations of the Code of Professional Responsibility.

Plan, Art. VI, ¶ 85 (emphasis added).

### III. OBJECTION

**A.   Confirmation Standards and Statutory Framework**

There are two relevant statutes governing chapter 11 plan provisions and confirmation. Section 1123(b)(6) allows plan proponents to include terms that are "not inconsistent with the

4

applicable provisions" of the Code. 11 U.S.C. § 1123(b)(6). Section 1129 of the Bankruptcy Code authorizes the bankruptcy court to confirm a plan only when it "complies with the applicable provisions of the Code." 11 U.S.C. § 1129. The plan proponent bears the burden of establishing compliance with Section 1129. In re Charter Commc'ns, 419 B.R. 221 (Bankr. S.D.N.Y. 2009) (citing Heartland Fed. Savs. & Loan, Ass'n v. Briscoe Enters. (In re Briscoe Enters.), 994 F.2d 1160, 1165 (5th Cir. 1993) (stating that "[t]he combination of legislative silence, Supreme Court holdings, and the structure of the Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown")); In re Worldcom, Inc., No. 02-13533 (AJG), 2003 WL 23861928, at *46 (Bankr. S.D.N.Y. Oct. 31, 2003) (citing Briscoe).

Section 1129(a) of the Bankruptcy Code contains 16 standards that must be met for the Court to confirm a plan. 11 U.S.C. § 1129(a). Two of those sixteen requirements are relevant here. Section 1129(a)(1) requires that the Court find that the plan "complies with the applicable provisions of" the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). Section 1129(a)(4) requires that the Court exercise substantive control over fees and costs related to the Chapter 11 case:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. §1129(a)(4). Section 1129(a)(4) is designed to "insure compliance with the policies of the Code that (1) the bankruptcy court should police the awarding of fees in title 11 cases and (2) holders of claims and interests should have the benefit of such information as might affect the claimants' decision to accept or reject the plan." See In re TCI 2 Holdings, LLC, 428 B.R. 117, 145-46 (Bankr. D.N.J. 2010) (internal quotation omitted) ("While a strong argument might be

5

made that payments that are not made to fiduciaries and that do not deplete the bankruptcy estate need not be subject to court approval, this is simply not the decision that Congress has chosen to make.").

For the reasons set forth below, the Debtors have not met their burden of proof showing that the Plan satisfies the confirmation standards of Section 1129 of the Bankruptcy Code.

**B.     The Release and Exculpation Provisions Contained in the Plan Do Not Satisfy Section 1129(a)(1) and (a)(3)**

In order for the Court to approve the exculpation and third party releases under the Plan, the Plan Proponents must demonstrate that such provisions are not inconsistent with the Second Circuit's decisions in In re Johns-Manville Corp., 517 F.3d 52 (2d Cir. 2008) ("Manville II"), vacated & remanded on other grounds, 557 U.S. 137 (2009), aff'g in part & rev'g in part, 600 F.3d 135 (2d Cir. 2010) ("Manville III") and Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F. 3d 136, 141 (2d Cir. 2005).

In Metromedia, the Second Circuit held that non-debtor third-party releases are proper only in "rare cases." Metromedia, 416 F. 3d at 141. The Second Circuit articulated at least two reasons for its reluctance to approve these releases:

> First, the only explicit authorization in the Code for non-debtor releases is 11 U.S.C. § 524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims, [and] . . .
>
> Second, a non-debtor release is a device that lends itself to abuse. By it, a non-debtor can shield itself from liability to third parties. In form, it is a release; in effect it may operate as a bankruptcy discharge without a filing and without the safeguards of the Code. The potential for abuse is heightened when releases afford blanket immunity.

Id. at 142.

The Second Circuit held that "[i]n bankruptcy cases, a Court may enjoin a creditor from

6

suing a third party, provided the injunction plays an important part in the Debtors' reorganization plan." Id. at 141 (quoting SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 960 F.2d 285, 292 (2d Cir. 1992)). The appellate court cautioned, however, that a non-debtor third-party release is not considered to be adequately supported by consideration simply because the non-debtor contributed something to the reorganization and the enjoined creditor took something out. Metromedia, 416 F.3d at 143. Rather, "[a] non-debtor third-party release should not be approved absent a finding by the court that 'truly unusual circumstances' exist that render the release terms important to the success of the plan." Id.

Subsequent cases further clarify the Metromedia requirements. For example, in In re DBSD North America, Inc., the Court stated:

> As the Second Circuit's decision in Metromedia and my earlier decision in Adelphia provide, exculpation provisions (and their first cousins, so-called "third party releases") are permissible under some circumstances, but not as a routine matter. They may be used in some cases, including those where the provisions are important to a debtor's plan; the claims are "channeled" to a settlement fund rather than extinguished; the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; the released party provides substantial contribution; and where the plan otherwise provides for full payment of the enjoined claims.

419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (emphasis in original) (footnotes omitted); In re Motors Liquidation Co., 447 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) ("Although (since the Code is silent on the matter) third-party releases aren't 'inconsistent with the applicable provisions of this title,' the Second Circuit has ruled that they're permissible only in rare cases, with appropriate consent or under circumstances that can be regarded as unique, some of which the Circuit listed. But where those circumstances haven't been shown, third-party releases can't be found to be 'appropriate.' ").

Before a court considers whether the proponent of a plan has demonstrated the "truly

7

unusual circumstances" mandated by Metromedia, it must first determine whether it has subject matter jurisdiction to approve the releases or injunctions provided for, by, and against non-debtor third-parties. See Manville II; accord In re Dreier LLP, 429 B.R. 112, 132 (Bankr. S.D.N.Y. 2010); In re Metcalfe & Mansfield Alternative Invs., 421 B.R.685, 695 (Bankr. S.D.N.Y. 2010). In Manville II, the Second Circuit held that "a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the res of the bankruptcy estate." Manville II, 517 F.3d at 66; see also Dreier, 429 BR. at 133 (because the court lacks jurisdiction to enjoin claims that do not affect property of the estate or the administration of the estate, non-debtor third-party releases must be limited to claims that are derivative of the debtors).

Here, the Plan Proponents include release and exculpation provisions in the Plan, see Plan, Art. VI, ¶¶ 84–85, without demonstrating that truly unusual circumstances exist to justify such expansive release terms. Metromedia, 416 F.3d at 143. Unless the Plan Proponents demonstrate that such release terms play an important role in this reorganization, the Court should not allow such provisions in the Plan. See id. at 141 ("[i]n bankruptcy cases, a Court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the Debtors' reorganization plan.").

Further, the Plan Proponents improperly attempt to provide blanket immunity to Miron Markus, Boris Markus and 220 Coster through these over-broad release terms. For example, pursuant to the exculpation provision, Miron Markus, Boris Markus and 220 Coster may be released from all causes of action that may have arisen post-petition. Plan, Art. VI at ¶ 84. As liability for the July 30 Fire, a post-petition event, has not been determined, it would be improper to provide an exculpation to Miron Markus, Boris Markus and 220 Coster at this time. Similarly, but even more broadly, the Plan Proponents attempt to provide a release to Miron Markus, Boris

8

Markus and 220 Coster for any pre-petition claims held by the estate.  This provision may shield these parties from any liability that may arise from, among others, (i) liability arising from the material breach of contract between the Debtor and 220 Laundry LLC and (ii) the actions of Miron Markus, Boris Markus, and 220 Coster with respect to the creation of the $1 million claim by Consolidated Edison Company.

## IV.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court (i) require that the Plan Proponents narrow the third party releases and exculpation provisions and/or require compliance with the law of this Circuit and the Bankruptcy Code; and (ii) grant such other relief as is just.

Dated: New York, New York
       October 22, 2013                    Respectfully submitted,

                                           TRACY HOPE DAVIS
                                           UNITED STATES TRUSTEE

                                    By:    */s/ Michael T. Driscoll*
                                           Michael T. Driscoll
                                           Trial Attorney
                                           Office of the United States Trustee
                                           201 Varick Street, Suite 1006
                                           New York, NY 10014
                                           Tel. No. (212) 510-0538